IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEVEN HEWITT,<br>　　　　　　　　Plaintiff,<br><br>v.<br><br>WILSON COUNTY, TENNESSEE,<br>WILSON COUNTY SHERIFF ROBERT<br>BRYAN, TURN KEY HEALTH CLINICS,<br>LLC, "OFFICER JOHN DOES 1-5," and<br>"MEDICAL JOHN DOES" 1-5,<br><br>　　　　　　　　Defendants. | Case No.<br><br>JURY DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, STEVEN HEWITT, by and through his undersigned counsel, Richard M. Brooks, and by way of complaint against the Defendants, states the following:

### I. INTRODUCTION

Defendants are responsible for Plaintiff's injuries caused by the Wilson County Jail's failure to provide him timely emergency medical attention and for the Jail's failure to provide him access to necessary prescribed medications during periods he was detained in the Jail post-conviction for alleged violations of the conditions of a sentence imposed by Wilson County Criminal Court.

### II. JURISDICTION AND VENUE

1.　This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.

1

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourteenth Amendment to the United States Constitution.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

### III. PARTIES

5. Plaintiff is an adult resident of Smith County, Tennessee.

6. Defendant WILSON COUNTY is a political subdivision of the State of Tennessee.

7. Defendant ROBERT BRYAN ("BRYAN") is the Sheriff of Wilson County, Tennessee with authority over the operation and management of the Wilson County Jail. He is sued in his individual capacity.

8. Defendant TURN KEY HEALTH CLINICS, LLC ("TURN KEY") is a limited liability company whose principal place of business is located at 900 NW 12th Street, Oklahoma City, OK 73106. TURN KEY is the third-party medical provider for the Wilson County Sheriff's Department and may be served through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

9.  Defendants "OFFICERS JOHN DOES 1-5" are adults who, at all times relevant to the claims herein, were employed by Defendant WILSON COUNTY as corrections officers at the Wilson County Jail and are being sued in their individual and official capacity.

10. Defendants "MEDICAL JOHN DOES 1-5" are adults who, at all times relevant to the claims herein, were employed by Defendant TURN KEY for provision of medical services to detainees at the Wilson County Jail and are being sued in their individual and official capacity.

## IV. FACTUAL ALLEGATIONS

11. Plaintiff was arrested in Smith County, Tennessee pursuant to a warrant issued by the Wilson County Criminal Court based upon an alleged violation approximately six months before for testing positive for fentanyl in violation of the conditions of the felony sentence entered by that court and transported to Wilson County Jail, where he was booked on January 10, 2025.

12. Prior to his conviction, Plaintiff had become dependent upon opiates prescribed for chronic pain associated with orthopedic injuries. His prescription for pain medication was abruptly terminated, leading him to acquire non-prescribed painkillers to manage his pain and support what had become an addiction to opiates.

13. Plaintiff's conviction was based upon allegations that he had acquired and provided two tablets of oxymorphone to a friend who was going through withdrawal and had asked Plaintiff to find something for him to alleviate the withdrawal symptoms.

14. Before he pleaded guilty and was sentenced, Plaintiff attended and successfully completed a rehabilitation program for opiate addiction.

15. Since his conviction and sentencing and prior to his arrest in Smith County, Plaintiff had neither intentionally nor knowingly consumed fentanyl nor consumed any narcotic pain medication without a prescription.

16. On January 20, 2025, while detained at the Wilson County Jail awaiting hearing on the alleged violation of the conditions of his sentence, Plaintiff, housed in a cell by himself, began vomiting up blood and suffering severe anemia and fatigue.

17. At his earliest opportunity that day, Plaintiff informed jail personnel that he was vomiting up blood and suffering severe fatigue, pointed to the bloody vomit on the floor of his cell and requested medical attention. The corrections officer, "OFFICER JOHN DOE 1," essentially shrugged and did nothing.

18. Plaintiff continued to vomit up blood and suffer severe fatigue. The next time he was able to speak to jail personnel, it was a different corrections officer, "OFFICER JOHN DOE 2". Again, Plaintiff described his worsening symptoms, pointed out the increased pool of bloody vomitus on the floor and requested medical attention. Like the last corrections officer, "JOHN DOE 2" also did nothing.

19. On January 22, 2025, Plaintiff was able to speak to was corrections officer Mendez, who upon listening to Plaintiff, seeing his condition and the pool of bloody vomit on the floor, contacted correctional medical personnel.

20. Immediately upon seeing Plaintiff on January 22, 2025, jail medical personnel advised the jail to immediately transport Plaintiffs to the emergency department of Vanderbilt Hospital in Lebanon where, upon his admission, Plaintiff was diagnosed with acute upper gastrointestinal (GI) bleeding and underwent emergency esophageal surgery.

21. Plaintiff remained at Vanderbilt Hospital recovering from surgery until February 24, 2025 when he was discharged, diagnosed with:

   a. Cirrhosis (scarring of the liver) with esophageal varices (enlarged veins);
   b. Acute blood loss anemia;
   c. Thrombocytopenia--abnormally low platelet (*thrombocyte*) count;

d. Portal hypertension (high blood pressure in the vein which carries blood to the liver) secondary to the cirrhosis; and
   e. Splenomegaly (enlarged spleen).

22. When jail personnel picked Plaintiff up for transport back to the Wilson County Jail from the hospital after Plaintiff was discharged, the hospital gave the jail personnel Plaintiff's' medical records from his admission to the hospital and the medicine Plaintiff had been prescribed:

   a. Carvedilol (commonly known as COREG), sixty 6.25 mg tablets, one to be taken every 12 hours;
   b. Dicyclomine (commonly known as BENTYL), thirty 10 mg capsules, one to be taken 3 times a day for ten days;
   c. Pantoprazole (commonly known as PROTONIX), thirty 40 mg tablets, one taken daily.

23. When Plaintiff was returned to custody at the Wilson County Jail, "MEDICAL JOHN DOE 1" was provided Plaintiff's medical records from the admission to Vanderbilt hospital, which outlined Plaintiff's serious, life-threatening medical conditions and the medications the hospital had prescribed to treat those conditions.

24. Also at the time, the TURN KEY medical staff, including "MEDICAL JOHN DOE 1" became aware that Plaintiff had Hepatitis C, a serious, communicable medical condition which can be cured by readily available prescription medications.

25. Despite having Plaintiff's medical records describing his life-threatening, serious medical conditions and the knowledge that Plaintiff had Hepatitis C, Plaintiff was neither provided access to the medications that the hospital had prescribed him and provided to the jail nor administered any medications for Hepatitis C.

26. On February 2, 2025, while in the pod's general population, Plaintiff became faint and dizzy and fell off his cot onto the jail's concrete floor. He was subsequently transported back to Vanderbilt Hospital.

27. Plaintiff was discharged on February 4, 2025, with additional diagnoses of:

5

a. Syncope (temporary loss of consciousness from reduced blood flow to the brain), type unspecified;
b. Bilateral lower extremity (leg & foot) edema (swelling);
c. Generalized abdominal pain; and
d. Blurred vision, left eye.

28. When jail personnel picked Plaintiff up for transport back to the Wilson County Jail from the hospital the second time after he was discharged, the hospital gave the transporting jail personnel a copy of Plaintiff's medical records for that second admission to the hospital, noting again the medicine Plaintiff had already had been prescribed that had already been provided to the jail:

a. Carvedilol (commonly, COREG), one 6.25 mg tablet taken every 12 hours;
b. Dicyclomine (commonly, BENTYL), one 10 mg capsules taken 3 times a day;
c. Pantoprazole (commonly, PROTONIX), one 40 mg tablet daily;

and gave the transporting jail personnel the medication Plaintiff was further prescribed upon discharge from his most recent admission:

> Sucralfate (commonly known as CARAFATE), 400 ml liquid suspension, 10 ml to be taken 4 times per day (with meals and at bedtime) for 10 days.

29. Once Plaintiff was returned to custody at the Wilson County Jail, he was neither provided access to the medicine that Vanderbilt Hospital had prescribed and provided to jail personnel nor administered medications for Hepatitis C.

30. On March 31, 2025, Plaintiff was brought before the Wilson County Criminal Court for the first time on the alleged probation violation. At that hearing, rather than challenge the alleged violation, Plaintiff stipulated it, not because he had violated the conditions of his sentence, but because the District Attorney made an offer to him that if he stipulated to violating the conditions of his sentence, he would be released from custody that day with credit for time served.

31. On April 10, 2025, while on a construction site in Smith County with his crew, Plaintiff had another syncope episode while working on a ladder after the crew left for lunch and came to

6

hours later after his crew found him lying on the ground after returning. Plaintiff left the site and presented himself to the emergency department of the Highpoint Health Riverview Hospital in Carthage, Tennessee and was admitted.

32. The hospital identified seven problems;

   a. Pancytopenia (a significant decrease in all three major types of blood cells), chronic;
   b. Status post shoulder surgery, chronic;
   c. Cirrhosis of the liver, chronic;
   d. Atypical syncope, acute;
   e. Panic attacks, chronic;
   f. Chronic obstructive pulmonary disease (COPD);
   g. Chronic pain;
   h. Stent in coronary artery, chronic;
   i. History of gunshot wound, chronic;
   j. Tobacco abuse disorder, chronic; and
   k. Acute chest pain, presented on admission.

33. He was discharged on April 11, 2025 with instruction to continue medications:

   a. Acetaminophen, 650 mg, for mild pain and fever;
   b. Simethicone, 30 ml for indigestion;
   c. Baclofen, 10 mg;
   d. Benzonatate, 100 mg, for cough;
   e. Bisacodyl, 10 mg;
   f. Carvedilol, 6.25 mg;
   g. Cyclobenzaprine HCl, 5 mg, for muscle spasm;
   h. Dicyclomine HCl, 10 mg;
   i. Famotidine, 20 mg;
   j. Magnesium Hydroxide, 30 ml;
   k. Magnesium Sulfate, 100 ml;
   l. Melatonin, 6 mg, for insomnia;
   m. Nicotine, 1 patch daily;
   n. Ondansetron HCl, 4 mg, for nausea/vomiting;
   o. Oxycodone;
   p. Pantoprazole Sodium, 40 mg;
   q. Ropinirole HCl, 6 mg; and
   r. Spironolactone, 12.5 mg.

34. On July 15, 2025, Plaintiff was booked into Wilson County Jail after having been arrested again for allegedly testing positive for fentanyl in violation of the conditions of his sentence imposed by Wilson County Criminal Court.

7

35. After Plaintiff was booked on July 15, 2025, he contacted a friend to bring his prescribed medications to the Wilson County Jail. The following day Plaintiff's friend came from east Smith County to the jail with Plaintiff's prescribed medications for his serious, life-threatening conditions and attempted to leave them with the jail. She waited hours in extremely hot weather for the jail to take possession of Plaintiff's prescribed medications from her, but the jail staff would not do so. She returned the following day to the jail with Plaintiff's prescription medication, and the jail eventually took possession of them.

36. At his first appearance before the Court on July 24, 2025, Plaintiff was released from custody by the Court pending his violation hearing so that Plaintiff could assemble the records he needed to disprove the allegations of having used fentanyl.

37. From his booking on July 15, 2025 to his release on July 24, 2025, Plaintiff was not provided access to his medications in the jail's possession prescribed for his serious, life-threatening conditions.

38. When Plaintiff returned to the Wilson County Criminal Court for his hearing on the alleged violation of the conditions of his sentence, he prevailed, and the Court found the alleged violation for fentanyl use had not been committed.

## V. CAUSE OF ACTION

Count 1: <u>Violation of the Right to Due Process Under the Fourteenth Amendment Failure To Provide Medical Care--42 U.S.C § 1983</u> (All Defendants)

39. All paragraphs above are incorporated herein as if fully restated verbatim.

40. All of the actions and omissions committed by Defendants BRYAN, TURN KEY, WILSON COUNTY, "OFFICER JOHN DOES 1-5 and "MEDICAL JOHN DOES 1-5" were taken under color of state law because they were each acting under the authority given to them by the

8

government and the acts and omissions were committed within the exercise of their official authority, responsibility, or duties.

41. The constitutional rights afforded to prisoners who have been convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to detainees under the Due Process Clause of the Fourteenth Amendment.

42. The Fourteenth Amendment to the United States Constitution requires that detainees be provided adequate medical care while in the custody of any government entity.

43. Plaintiff was detained in the Wilson County Jail post-conviction pending hearing on an allegation that he had violated the terms of his sentence on felony charges imposed by the Wilson County Criminal Court.

44. Plaintiff's numerous instances of vomiting blood on to the floor by his bed and his lethargy presented to "OFFICERS JOHN DOES 1-5" an objectively serious medical need that required medication and accommodation.

45. "OFFICERS JOHN DOES 1-5"and "MEDICAL JOHN DOES 1-5" had actual knowledge of Plaintiff's serious medical need for care and medication.

46. "OFFICERS JOHN DOES 1-5" and "MEDICAL JOHN DOES 1-5" disregarded Plaintiff's serious, life-threatening medical need for care and medication.

47. "OFFICERS JOHN DOES 1-5" and "MEDICAL JOHN DOES 1-5" knew or had reason to know that failure to provide medical care and prescribed medication to an inmate who suffers from a serious, life-threatening medical condition creates a substantial risk of harm.

48. "OFFICERS JOHN DOES 1-5" and "MEDICAL JOHN DOES 1-5" are liable for deliberate indifference based on their above-described disregard of serious, life—threatening medical need for care and attention.

49. Defendant BRYAN knew or had reason to know that failure to provide an inmate who suffered from a serious, life-threatening medical condition created a substantial risk of harm.

50. Defendant BRYAN knew or had reason to know that inmates including Plaintiff diagnosed with serious, life-threatening conditions were routinely admitted to the Wilson County Jail and were exposed to an excessive risk of harm by the concrete floors, untrained staff, and routine delays and disruptions in administration of essential care and medications.

51. Defendant WILSON COUNTY is liable for the policies, customs, and practices implemented by Defendant BRYAN because he is the final policymaker for the Wilson County Jail.

52. Defendant WILSON COUNTY is liable for Defendants BRYAN's and TURN KEY's ratification of the jail correctional and medical personnel's disregard for inmates' serious, life-threatening medical needs.

53. Within the meaning of 42 U.S.C. § 1983, TURN KEY acted under color of state law in providing medical care to post-conviction detainees.

54. Defendants WILSON COUNTY and BRYAN are liable for the policies, practices, and customs of TURN KEY because they delegated final decision-making authority to TURN KEY concerning the provision of medical care to inmates at the Wilson County Jail.

55. Defendants BRYAN, WILSON COUNTY and TURN KEY, exhibited deliberate indifference to Plaintiff's serious medical needs by:

   a) Maintaining policies, practices, and customs whereby medically necessary accommodations are ignored by correctional staff;

b) Maintaining policies, practices, and customs that allow and cause correctional personnel to disregard the serious medical needs of inmates by failing to take reasonable measures to ensure that medical staff receive critical medical information;

c) Failing to train licensed practical nurses and correctional officers regarding the monitoring and implementation of medically necessary accommodations;

d) Failing to establish policies and procedures whereby critical medical information for detainees is communicated to and implemented by the Sheriff's medical staff;

e) Failing to establish adequate training, procedures, and supervision to ensure that critical medical accommodations are effectively communicated to and implemented by correctional officers;

f) Maintaining a custom of acquiescence to interference by correctional officers in the provision of critical medical care to inmates at the Wilson County Jail.

56. Defendants BRYAN, WILSON COUNTY, and TURN KEY are policymakers that are aware of, condone and facilitate by their inaction the disregard for inmates' serious medical needs within the Wilson County Jail.

57. Defendants WILSON COUNTY and TURN KEY are liable for deliberate indifference based on their above-described failure to train medical staff and correctional officers.

58. WILSON COUNTY and TURN KEY are liable for deliberate indifference based on their above-described failure to supervise medical staff and correctional officers.

59. As a result of Defendants' reckless disregard of Plaintiff's serious medical needs, Plaintiff suffered injuries including pain and suffering, permanent physical and mental injuries, emotional distress, loss of enjoyment of life, reduced life expectancy, loss of income and pecuniary damages including extensive past and future medical bills.

11

60. All of Plaintiff's injuries and damages were proximately caused by Defendants' unconstitutional acts, omissions, customs, policies, and procedures.

## VI. DAMAGES

61. As a direct and proximate result of Defendants' violations of his federally protected rights and reckless disregard with regard to his serious medical need, Plaintiff has suffered:

   a) Pain and suffering,

   b) Physical and mental injuries,

   c) Pecuniary damages including past and future medical expenses,

   d) Loss of income,

   e) Loss of enjoyment of life

   f) Serious mental suffering and emotional distress

62. Based on their intentional and reckless misconduct, Plaintiff requests an award of punitive damages against Defendants BRYAN, TURN KEY. "OFFICERS JOHN DOES 1-5" and "MEDICAL JOHN DOES 1-5."

## VII. REQUEST FOR RELIEF

Based upon the foregoing, Plaintiff requests:

A. Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

B. A jury be empaneled to try this case;

C. That Declaratory Judgment be entered;

D. That Plaintiff be awarded nominal damages against Defendants, jointly and severally;

E. That Plaintiff be awarded compensatory damages against Defendants, jointly and severally;

F. That Plaintiff be awarded punitive damages against Defendants BRYAN. and TURN KEY, jointly and severally, in an amount deemed appropriate by a jury;

G. That Plaintiff be awarded judgment under 42 U.S.C. § 1988 against Defendants, jointly and severally, for reasonable attorney's fees, costs, and expenses;

H. For pre-judgement and post-judgment interest on all damages awarded;

I. For such other and further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED this 20th day of January 2026.

*Richard M. Brooks*
RICHARD M. BROOKS (#4308)
Attorney for Plaintiff
130 Third Avenue West
Carthage, TN 37030
(615) 735-0807
utkrmb@comcast.net

## CERTIFICATION

I am the aforementioned plaintiff in this action and certify that to the best of my knowledge and belief the foregoing allegations are true and correct.

DATED this 20th day of January 2026.

*Steven Hewitt*
STEVEN HEWITT, Plaintiff